**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.** |
| | : | **3:12-CV-00116 (VLB)** |
| **v.** | : | |
| | : | |
| **JHW GREENTREE CAPITAL, L.P.,** | : | |
| **Defendant.** | : | **June 11, 2014** |

<u>**MEMORANDUM OF DECISION GRANTING MOVANT'S EMERGENCY MOTION TO**
**MODIFY THE STAY [Dkt. 78]**</u>

**I.      <u>Introduction</u>**

Movant Weingarten Maya Tropicana, LLC ("Weingarten" or "Movant") was the lessor of real property to Baja Fresh Westlake Village, Inc., the predecessor in interest to Fresh Enterprises, LLC ("Fresh"), a wholly owned subsidiary of BF Acquisition Holdings, LLC, an entity in which JHW Greentree Capital, L.P. ("JHW Greentree" or "Greentree") has an equity interest.  Currently before the Court is Weingarten's Emergency Motion to Modify the Stay imposed in this case.  For the reasons that follow, Movant's motion is GRANTED.

**II.      <u>Background</u>**

JHW Greentree is a small business investment company licensed by the United States Small Business Association ("SBA" or "Receiver") on or about September 29, 2004.  On February 10, 2012, with the consent of the parties, the Court entered an Order of Receivership and appointed the SBA as the liquidating Receiver of JHW Greentree.  [Dkt. 9].  The Receiver was appointed "for the

purpose of marshalling and liquidating in an orderly manner all of Greentree's assets and satisfying the claims of creditors thereof in the order of priority as determined by this Court." [Dkt. 9, Receivership Order ¶1]. Pursuant to paragraphs 7 and 8 of the Order, all civil litigation involving JHW Greentree, its present or past officers, directors, managers, or general partners, its Receiver, and/or its assets has been stayed. JHW Greentree's assets include a sixty percent equity interest in the voting class equity of BF Acquisition Holdings, LLC ("BFAH"), and Greentree also controls BFAH's board.

Weingarten leased non-residential property in Las Vegas, Nevada (the "Premises") to Baja Fresh Westlake Village, Inc. for use as a Baja Fresh restaurant pursuant to a Lease Contract ("Lease") dated February 12, 2003. [Dkt. 79, M. to Lift Stay p. 3; dkt. 79-2, Lease pp. 1, 37]. Baja Fresh Westlake Village, Inc. is the predecessor in interest to Fresh Enterprises, LLC ("Fresh"). [Dkt. 79, M. to Lift Stay p. 3]. Fresh is a wholly owned subsidiary of BFAH, in which JHW Greentree holds a sixty percent equity interest. The Receiver asserts that this restaurant location is franchised and that BFAH has entered into a sublease with a current franchisee. [Dkt. 81, Receiver's Opposition, p. 3].

The Lease contained an option to extend the Lease for an additional five year term at the end of the initial ten year term. Weingarten claims that Fresh failed to timely[1] exercise this option to extend, and thus the Lease term expired on January 31, 2014. Weingarten notified Fresh of the Lease's expiration date by

---

[1] Fresh was required to notify Weingarten of its decision to exercise the option to extend at least 180 days prior to the Lease's expiration. [Dkt. 79-6, D. NV Order Granting MTD, p. 1].

letter on November 8, 2013.  [Dkt. 79, M. to Lift Stay p. 3; dkt. 79-3, 11/8/13 letter].

On November 20, 2013, Fresh filed a complaint against Weingarten in Nevada

state court, alleging, among other things, that Weingarten breached the Lease by

refusing to allow an extension of the Lease beyond the initial ten year term, and

seeking declaratory judgment as to Fresh's rights to the Premises and to exercise

the option to extend the Lease.  [Dkt. 79, M. to Lift Stay p. 4; dkt. 79-4, NV

complaint, ecf pp. 8-10].  Weingarten removed the action to the Nevada District

Court.  [Dkt. 79-4, Notice of Removal].

      Weingarten filed a Motion to Dismiss in the Nevada District Court action on

December 19, 2013, which Fresh opposed.  [Dkt. 79-5, Weingarten MTD].  On

March 25, 2014, apparently not having been informed of the receivership and the

stay, the Nevada District Court granted Weingarten's Motion to Dismiss, holding

that Fresh had failed to timely exercise the option to extend pursuant to the Lease

and that no equitable relief was justified.[2]  [Dkt. 79-6, D. NV Order Granting MTD].

Weingarten asserts that following the Nevada District Court's ruling, it informed

Fresh that it intended to file an unlawful detainer or summary eviction proceeding

against Fresh in Nevada state court.  [Dkt. 79, M. to Lift Stay p. 4].  Weingarten

asserts that Fresh then notified Weingarten for the first time of the existence of

this receivership proceeding and of the stay pursuant to this Court's receivership

order, and that Fresh threatened to file a notice staying any future action that

Weingarten planned to take to recover the Premises. [*Id.*].  Fresh has appealed

---

[2] The Nevada District Court's Order specifically notes that "Plaintiff [Fresh]
admits that it gave notice of intent to exercise the option to extend two weeks
late," and that as a result Fresh had requested equitable relief from the court.
[Dkt. 79-6, D. NV Order Granting MTD, p. 3, lines 6-7].

the Nevada District Court's ruling to the Ninth Circuit Court of Appeals.  [Dkt. 81, Receiver's Opposition p. 1].  That appeal was pending when the subject motion was filed.  In support of its opposition to the Movant's motion the Receiver filed a declaration of Charles Rink, the president and CEO of BFAH, in which Rink avers that he was informed by an unidentified party and, presumably on the basis of this undisclosed representation alone, that he believes that the Lease was extended by Fresh.  [Dkt. 81-1, Rink Decl, ¶5].  The Rink declaration tacitly admits that its declarant has no personal knowledge of whether the Lease was extended and there is no other evidence on the record tending to undermine the validity of the Nevada decision.  Fresh has not sought a stay of the Nevada District Court's decision pending the appeal.

Weingarten asserts that, as a result of Fresh's failure to timely exercise its option to extend the Lease and of the Lease's expiration on January 31, 2014, Weingarten located a replacement tenant for the Premises, Chipotle Mexican Grill, Inc., and entered into a ten year lease with Chipotle on December 16, 2013.  [Dkt. 79, M. to Lift Stay p. 5; dkt. 79-7, Chipotle lease, p.1].  Weingarten asserts that the Chipotle lease provides for over $1.44 million in value to Weingarten in the form of rent and triple-net payments over the initial ten year term of the lease.  [Dkt. 79, M. to Lift Stay p. 5].  Further, Article 52 of the Chipotle lease provides that, if Weingarten fails to regain exclusive and legal possession of the Premises from Fresh and so notify Chipotle in writing by April 1, 2014, then Chipotle may terminate the Chipotle lease upon thirty days prior written notice to Weingarten between April 1 and April 15, 2014.  [Dkt. 79-7, Chipotle lease, p.37, Article 52].

4

Because of Weingarten's inability to recapture legal possession of the Premises from Fresh prior to April 1, 2014, Weingarten requested and Chipotle assented to a thirty day delay of this April 1 deadline.  Pursuant to an amendment to the Chipotle lease entered into on April 3, 2014, Chipotle may terminate the Chipotle lease upon thirty days written notice to Weingarten between May 1 and May 15, 2014.  [Dkt. 79-8, Amendment to Chipotle lease].

Weingarten argues that if the stay order is not modified to permit it to proceed against Fresh and regain possession of the Premises, it will be substantially harmed in that it risks losing Chipotle as a new tenant, and may be exposed to damages for breaching the Chipotle lease.  [Dkt. 79, M. to Lift Stay p. 5].  The Receiver counters that maintaining the stay is in the best interest of the receivership, at least until the Ninth Circuit resolves Fresh's appeal of the District of Nevada's ruling, and that Weingarten has failed to meet the standard for lifting the stay.  [Dkt. 81, Receiver's Opposition p. 1].

For the reasons stated below the Court finds that lifting the judicial stay preserves the status quo, that Weingarten would suffer a substantial injury if not permitted to proceed, and that Weingarten's underlying claim is meritorious.  Accordingly, the stay is lifted.

III.   <u>Analysis</u>

a.  <u>The Stay is Inapplicable to the Movant's Proposed Action</u>

First and foremost, the Lease in which Fresh claims it possesses an interest is no longer an asset of the Receivership estate, and thus the stay cannot

apply to Weingarten's proposed action against Fresh.  The Nevada District Court held that Fresh failed to timely exercise its option to extend the Lease for an additional five years and thus the right to renew was lost under Nevada law.  [Dkt. 79-6, D. NV Order Granting MTD, p. 3].  By failing to timely exercise this option to extend, Fresh effectively relinquished its interest in the Lease and in the Premises, and the Lease terminated on January 31, 2014.  Thus, Fresh held no interest in the Premises after January 31, 2014 as it had failed to exercise its right to maintain an interest in the Premises.  Therefore, as Fresh had no interest in the Premises after January 31, the Receiver likewise can have no interest in the Premises after this date.  Absent an interest in the Premises this Court's litigation stay cannot apply to Weingarten's proposed action to force Fresh from the Premises, which Premises Fresh is currently unlawfully occupying.  In sum, the expired Lease and the Premises on which Fresh is holding over are not assets over which this receivership extends and so the stay cannot and does not apply to the Movant's proposed action to regain physical possession of the Premises.

b. Factors Favor Lifting the Stay

However, *even if* the Lease and/or the Premises are current assets of the receivership estate, Weingarten has met the standard for lifting the litigation stay.

A district court may impose a litigation stay on a non-party to a receivership as part of its inherent power as a court of equity to fashion effective relief.  *S.E.C. v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010) (citing *S.E.C. v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980) ("*Wencke I*")).

> The purposes of a receivership are varied, but the purpose of imposing a stay of litigation is clear.  A receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant.

*U.S. v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005).  "Nevertheless, an appropriate escape valve, which allows potential litigants to petition the court for permission to sue, is necessary so that litigants are not denied a day in court during a lengthy stay."  *Id.*

Courts have found litigation stays in the receivership context to be enforceable against non-parties.  *See, e.g.*, *Acorn Tech. Fund, L.P.*, 429 F.3d at 442 (affirming receivership litigation stay against non-parties); *S.E.C. v. Illarramendi*, 3:11CV78 JBA, 2012 WL 234016 (D. Conn. Jan. 25, 2012) (declining to lift anti-litigation stay to permit non-party to pursue claims in bankruptcy against receivership entities).

When analyzing a motion to lift a litigation stay imposed by a receivership court, courts utilize a three-part test articulated by the Ninth Circuit in *S.E.C. v. Wencke*, 622 F.2d 1363 (9th Cir. 1980) ("*Wencke I*") and *S.E.C. v. Wencke*, 742 F.2d 1230 (9th Cir. 1984) ("*Wencke II*"), which has been applied by courts in the Second Circuit.[3]  *See S.E.C. v. Byers*, 592 F. Supp. 2d 532, 536 (S.D.N.Y. 2008) *aff'd*, 609 F.3d 87 (2d Cir. 2010); *S.E.C. v. Illarramendi*, 3:11CV78 JBA, 2012 WL 5832330 (D.

---

[3] This test has also been adopted by the Third, Fifth, and Tenth Circuits, as well as by courts in the Fourth, Sixth, Seventh, and Eighth Circuits.  *See U.S. v. Acorn Tech. Fund, L.P.*, 429 F.3d 438 (3d Cir. 2005); *S.E.C. v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011); *S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1196 (10th Cir. 2010); *U.S. v. ESIC Capital, Inc.*, 685 F. Supp. 483 (D. Md. 1988); *S.E.C. v. One Equity Corp.*, 2:08-CV-667, 2010 WL 4878993 (S.D. Ohio Nov. 23, 2010); *F.T.C. v. 3R Bancorp*, 04 C 7177, 2005 WL 497784 (N.D. Ill. Feb. 23, 2005); *U.S. v. Petters*, CIV. 08-5348 ADM/JSM, 2012 WL 836866 (D. Minn. Mar. 12, 2012).

Conn. Nov. 16, 2012); *S.E.C. v. Byers*, 08 CIV. 7104 DC, 2012 WL 954254 (S.D.N.Y. Feb. 28, 2012); *S.E.C. v. Illarramendi*, 3:11CV78 JBA, 2012 WL 234016 (D. Conn. Jan. 25, 2012).  Pursuant to *Wencke II*, when determining whether to lift a litigation stay, a court should consider "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim."  *Wencke II*, 742 F.2d at 1231; *Byers*, 592 F. Supp. 2d at 536, *aff'd*, 609 F.3d 87 (2d Cir. 2010) (citing *Wencke II*).

"The *Wencke* test simply requires the district court to balance the interests of the Receiver and the moving party."  *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985); *Acorn Tech. Fund, L.P.*, 429 F.3d at 443 (citing same).  The movant bears the burden of proving that the balance of the factors weighs in favor of lifting the stay.  *Illarramendi*, 2012 WL 5832330, at *2 (citing *U.S. v. Petters*, No. 08–5348 ADA/SJM, 2008 WL 5234527, at *3 (D. Minn. Dec. 12, 2008)); *Acorn Tech. Fund, L.P.*, 429 F.3d at 450; *S.E.C. v. Stinson*, CIV.A. 10-3130, 2012 WL 1994770, at *1 (E.D. Pa. June 4, 2012).

c.  <u>Maintenance of Status Quo Versus Injury to the Movant</u>

The first *Wencke II* factor requires a court to consider "whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed."  742 F.2d at 1231.  This factor "essentially balances the interests in preserving the receivership estate with the interests" of the movant.  *S.E.C. v. Stanford Int'l Bank Ltd.*, 424 F. App'x

8

338, 341 (5th Cir. 2011); *Illarramendi*, 2012 WL 234016 (same); *Schwartzman v. Rogue Int'l Talent Grp., Inc.*, CIV.A. 12-5255, 2013 WL 460218 (E.D. Pa. Feb. 7, 2013) (first factor requires court "to balance the Receiver's interest in maintaining the status quo with any injury the moving party may suffer if the stay remains in place"); *U.S. v. ESIC Capital, Inc.*, 675 F. Supp. 1462, 1463 (D. Md. 1987) (court must assess "the competing interests of the injury to the moving party versus preserving the status quo").  When considering the preservation of the status quo, courts should give "appropriately substantial weight to the receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate."  *Acorn Tech. Fund, L.P.*, 429 F.3d at 443.

Weingarten contends that this factor tips in its favor because maintaining the stay would cause it substantial harm while lifting the stay would not adversely affect the status quo.  First, Movant argues, the Receiver's filing of its *Unopposed Motion for Entry of an Order Approving the Receiver's Recommended Disposition of Claims, Authorizing Payment of Approved Claims and Establishing Summary Disposition Proceedings* (dkt. no. 62) on January 8, 2014, demonstrates that, because the Receiver itself is ready to distribute assets and will itself disturb the status quo, maintaining the stay as to the Movant will not genuinely preserve the status quo, nor will the Receiver be harmed by a lifting of the stay.  [Dkt. 79, M. to Lift Stay p. 8].

Second, Weingarten asserts that its inability to proceed against Fresh in Nevada state court to recover possession of the Premises exposes Weingarten to

substantial harm.  [Dkt. 79, M. to Lift Stay p. 8].  If the stay is not lifted, the Movant will be unable to pursue legal proceedings to evict Fresh from the Premises and thus will be unable to perform under the Chipotle lease, resulting in the loss of $1.44 million of expected revenue over the ten year life of the lease, as well as potential liability for breach of the Chipotle lease.  [*Id*.].

The Receiver, on the other hand, argues that should the stay be lifted, BFAH and its subsidiaries would be irreparably harmed; the franchisee would lose its profitable location to a competitor before the Ninth Circuit will be able to hear Fresh's appeal of the District of Nevada's decision, thus rendering the appeal moot.  [Dkt. 81, Receiver's Opposition p. 6].  Further, imposition of the stay and its retention, the Receiver argues, has allowed BFAH and its subsidiaries to "rebuild the brands and slowly recover and settle its cases with its creditors, to the benefit of the JHW receivership estate."  [*Id*.].  Moreover, the Receiver asserts (1) that Weingarten has brought on any alleged harm itself, (2) that BFAH "is current in its payments [on the Premises] and unilaterally has offered to pay more for the premises, per square footage, where [sic] they to remain on the premises for the same term as [Chipotle]," and (3) that there is nothing indicating that Weingarten cannot amend the terms of the Chipotle lease a second time.  [*Id*. at 6-7].  These factors, the Receiver asserts, show that Weingarten will suffer no irrevocable injury should the stay remain in place.

The Court concludes that Weingarten has met its burden of demonstrating that its potential injury is sufficiently substantial to override the Receiver's interest in maintaining the status quo.  First, the Court agrees that the Receiver's

interest in maintaining the status quo at this juncture is low, given that the Receiver itself has moved to disturb the status quo by establishing summary disposition proceedings and authorizing payment of claims, and given that this Court is in the process of ruling on this motion and establishing summary disposition proceedings.  Moreover, although the Receiver has asserted through the declaration of Charles Rink that "BF collects substantial royalties from the franchisee of this restaurant that are part of the revenue stream making up the assets of the company" and that "BF would be detrimentally affected by the loss of this revenue stream if this location were lost to a competitor," neither Mr. Rink nor the Receiver has quantified either the profits from this location as a percentage of profits from all locations or the magnitude of loss that BFAH would incur if the stay were lifted.  Thus the Receiver has presented no facts from which the Court could determine the materiality of lifting the stay.  [Dkt. 81-1, Rink Decl. ¶4].

Second, Weingarten has clearly demonstrated that it stands to lose the benefits of the Chipotle lease if it is not permitted to regain physical possession of the Premises from Fresh, which may result in a ten year loss of $1.44 million in expected revenue, plus any monetary liability that may occur for breach of the Chipotle lease.  Fresh's argument that it has, at some point prior to the filing of its opposition motion, offered to pay more to remain on the Premises than Weingarten could collect from Chipotle is irrelevant, as is its argument that the Movant has brought upon itself any harm that may occur.  The District of Nevada decision held that Fresh failed to timely exercise its option to extend the Lease

and the Lease expired on January 31, 2014.  Weingarten thus had the right to expect Fresh to relinquish the premises by that date and had every right to enter into a lease with a tenant to occupy and possess the Premises upon Fresh's election not to extend.

Fresh's unilateral offer to pay more for the Premises than will Chipotle does not negate the harm to Weingarten if it loses the Chipotle lease, especially given that the Receiver has made no attempt to clarify *when* it made the offer of increased payment to Weingarten, whether that offer still stands, the terms of that offer, or what monetary damages Weingarten would still incur for breaching the Chipotle lease and maintaining the Lease with Fresh.  Finally, the amount of the lease payments is not the only factor in valuing a lease.  The creditworthiness of the lessee is a significant factor as well.  The fact that the Fresh Lease subjects Weingarten to a stay makes the Chipotle lease inherently more valuable even at a lower rent.

The argument that Weingarten could amend the Chipotle lease because it has done so in the past is unsupported and undermined by the facts, as the Receiver has offered no evidence whatsoever that amendment would be possible or that Chipotle would consent to wait an indefinite period of time – until the Ninth Circuit rules on Fresh's appeal – to take possession of the Premises.  Indeed, Chipotle's negotiation of a one month extension of the termination provision is indicative of its unwillingness to wait indefinitely.

Lastly, the injury to the Movant if the stay is not lifted is imminent.  Article 52 and the amendment to the Chipotle lease provide that if Weingarten fails to

regain exclusive and legal possession of the Premises from Fresh and so notify Chipotle in writing by May 1, 2014, then Chipotle may terminate the Chipotle lease upon thirty days prior written notice to Weingarten between May 1 and May 15, 2014.  Thus, maintaining the litigation stay as to Weingarten will trigger (and has already triggered) this clause of the Chipotle lease and is likely to cause imminent injury, as May 1, the date by which Weingarten must regain the Premises from Fresh, has passed.

For the foregoing reasons, the Court concludes that Weingarten has met its burden of demonstrating substantial harm.  This harm outweighs the Receiver's interest in maintaining the status quo, which it has requested and this Court intends to imminently alter.  Therefore, the first *Wencke II* factor favors the Movant.

    d.  <u>Timing</u>

The second *Wencke II* factor requires courts to analyze the time in a receivership in which a motion to lift a litigation stay is made.  There is no "clear cut-off date after which a stay should be presumptively lifted."  *Acorn Tech. Fund, L.P.*, 429 F.3d at 450.  The timing factor is fact-specific and "based on the number of entities, the complexity of the scheme, and any number of other factors." *Stanford Int'l Bank Ltd.*, 424 F. App'x at 341; *see also S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010) ("the timing factor is case-specific").

The Ninth Circuit explained in *Wencke I* that,

> [w]here the motion for relief from the stay is made soon after
> the receiver has assumed control over the estate, the
> receiver's need to organize and understand the entities under
> his control may weigh more heavily than the merits of the

> party's claim.  As the receivership progresses, however, it may
> become less plausible for the receiver to contend that he
> needs more time to explore the affairs of the entities. The
> merits of the moving party's claim may then loom larger in the
> balance.

*Wencke I*, 622 F.2d at 1373-74.  Drawing from the Ninth Circuit's precedent, the

Third Circuit has similarly concluded that

> [f]ar into a receivership, if a litigant demonstrates that harm
> will result from not being able to pursue a colorably
> meritorious claim, we do not see why a receiver should
> continue to be protected from suit.  On the other hand, very
> early in a receivership even the most meritorious claims might
> fail to justify lifting a stay given the possible disruption of the
> receiver's duties.

*Acorn Tech. Fund, L.P.*, 429 F.3d at 443-44.

Generally, courts are reluctant to lift litigation stays early in a receivership

where lifting a stay would disrupt the receiver's duty to organize and understand

its assets.  *See S.E.C. v. Byers*, 592 F. Supp. 2d 532, 537 (S.D.N.Y. 2008) *aff'd*, 609

F.3d 87 (2d Cir. 2010) (in SEC receivership action, where receiver had "only just

begun to investigate the full extent of the fraudulent scheme," timing factor

weighed in favor of receiver as "permitting some investors to file involuntary

bankruptcy petitions would hinder the Receiver's investigation"); *S.E.C. v.*

*Illarramendi*, 3:11CV78 JBA, 2012 WL 234016 (D. Conn. Jan. 25, 2012) (timing

factor weighed in favor of receiver where receivership was six months old at time

of movant's motion, receiver had just begun its voluminous investigation, and the

bar date for claims against the receivership entities had just passed); *Stanford*

*Int'l Bank Ltd.*, 424 F. App'x at 341-42 (affirming district court's conclusion that

timing factor weighed in favor of receiver and its interest in marshaling and

conserving the estate where receivership had been in place for one year,

underlying Ponzi scheme was complex and intricate, involving many entities and billions of dollars, satellite litigation instigated by receiver on behalf of estate was just beginning); *Belsome v. Rex Venture Grp.*, LLC, 3:12CV800, 2013 WL 6860303 (W.D.N.C. Dec. 30, 2013) (finding that timing factor weighed in favor of receiver in Securities Exchange Commission receivership where receiver was "engaged in intensive investigation and analysis, reconstructing the financials of [the entity], analyzing large volumes of documents, liquidating the company's assets, and preparing for the filing of clawback actions");  *F.T.C. v. 3R Bancorp*, 04 C 7177, 2005 WL 497784 (N.D. Ill. Feb. 23, 2005) (timing factor favored receiver where receiver had "had little more than three months to begin to unravel the[] labyrinthine entanglements" involved in a far-reaching telemarketing scam); *ESIC Capital, Inc.*, 675 F. Supp. at 1464 (timing factor favored receiver where receivership was two years old, receiver needed more time to analyze matters, and where lifting stay would vitiate orderly administration of estate).

Conversely, a lift of the stay is more palatable later in a receivership's lifetime, after the receiver has had sufficient time to conduct its duties.  *See Wencke II*, 742 F.2d at 1232 (district court abused its discretion in refusing to lift stay preventing commencement of suits against receivership where receiver was ready to distribute assets of the estate, receivership had been in existence for over seven years with no new material facts having been discovered for at least six years, and disgorgement order had been entered requiring transfer of shares to receiver for benefit of public shareholders); *S.E.C. v. Provident Royalties, L.L.C.*, 3:09-CV-1238-L, 2011 WL 2678840 (N.D. Tex. July 7, 2011) (timing factor

weighed heavily in favor of lifting stay where receivership was almost two years old, receiver had marshaled almost all receivership assets and had proposed a plan of distribution); *SEC v. Private Equity Mgmt. Grp.*, LLC, CV 09-2901 PSG EX, 2010 WL 4794701 (C.D. Cal. Nov. 18, 2010) (second factor cut against receiver where receivership was well over one year old and receiver had progressed sufficiently in the effort to organize and understand the entities under his control, as evidenced by regular status reports to the court).

Weingarten argues that the stay should be lifted because the receivership has been in place for more than twenty-six months, and the Receiver has filed both a status report (extolling the successes of the receivership) and its disposition motion.  [Dkt. 79, M. to Lift Stay p. 9].  The Receiver counters that the stay should not be lifted because the Receiver, by way of its disposition motion, has "merely informed the Court by its Motion … that the Receiver has compiled the creditor pool and has determined their priority of payments as funds permit," but "has not stated that it is in the position of distributing all of the assets of the estate as not all have been liquidated."  [Dkt. 81, Receiver's Opposition pp.6-7].

Here, the receivership has been in place since February 9, 2012, more than twenty-eight months.  On January 8, 2014, the Receiver filed a *Motion for Entry of an Order Approving the Receiver's Recommended Disposition of Claims, Authorizing Payment of Approved Claims and Establishing Summary Disposition Proceedings* (dkt. no. 62), which requests that the Court grant Greentree "authority to make immediate payment" to two claimants, and this Court will enter an order establishing summary disposition proceedings shortly.  However,

the Receiver will, at some undefined point in the future, liquidate Greentree's assets and wind down the Receivership estate.  This receivership is thus at a midpoint; the Receiver has progressed in the effort to organize, understand, and marshal the entities under its control but has not yet liquidated the assets. Weingarten, however, has demonstrated that harm will result from not being able to pursue its claim against Fresh, and the Receiver has progressed far enough in its duties that this Court is comfortable that the timing factor weighs in favor of the Movant.  *See, e.g., S.E.C. v. Provident Royalties, L.L.C.*, 3:09-CV-1238-L, 2011 WL 2678840 (N.D. Tex. July 7, 2011) (timing factor weighed heavily in favor of lifting stay where receivership was almost two years old, receiver had marshaled almost all receivership assets and had proposed a plan of distribution).

> **e.** <u>Merit of the Movant's Underlying Claim</u>

The third consideration the Court must make is the merit of the Movant's underlying claim.  "A district court need only determine whether the party has colorable claims to assert which justify lifting the receivership stay."  *Acorn Tech.*, 429 F.3d at 449.  The more meritorious a movant's underlying claim, the more heavily this factor will weigh in the movant's favor.  *See, e.g.*, *Wencke I*, 622 F.2d at 1373 ("Where the claim is unlikely to succeed (and the receiver therefore likely to prevail), there may be less reason to require the receiver to defend the action now rather than defer its resolution").

However, even meritorious claims may not tip the scales in favor of lifting a litigation stay where the first and second prongs of the *Wencke II* inquiry favor the receiver.  *See, e.g.*, *Acorn Tech. Fund, L.P.*, 429 F.3d at 449 (upholding denial

of stay where, although movants' proposed claims against receiver had merit and thus third prong of *Wencke II* test was satisfied, but movants failed on the timing factor, and did not meet first prong because litigation could have resulted in movants' ability "to withdraw funds from the receivership estate before the receiver [was] ready to distribute funds to *all* creditors," and substantial injury could not derive from movants' desire to have "the first bite at the apple."); *Universal Fin.*, 760 F.2d at 1039 (upholding denial of lift of stay where movants had meritorious claim but where "havoc … would ensue if the stay were lifted at this time"); *Med Resorts Int'l, Inc.*, 199 F.R.D. at 609 (stay not lifted where, although movants' claim was meritorious, timing factor did not favor movants and movants had not articulated injury other than general delay in enforcing their rights).

Here, the Nevada District Court has granted Weingarten's motion to dismiss Fresh's claims and the action against it and has ruled that Fresh failed to timely exercise its option to extend the Lease under Nevada law, thus abandoning the lease effective January 31, 2014.  Fresh's appeal of the District Court's decision does not alter the current law of the case and thus does not establish that the merits of Weingarten's claims are unsettled.  On the contrary, the District Court of Nevada decision, which dismissed the action in full, is a final decision and is reviewable by an appellate court only.  *See* 28 U.S.C. § 1291 ("The courts of appeals … shall have jurisdiction of appeals from all final decisions of the district courts of the United States…"); *Chasser v. Achille Lauro Lines*, 844 F.2d 50 (2d Cir. 1988) aff'd sub nom. *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989) (a

district court's denial of a motion to dismiss, which leaves a controversy pending, is not a final decision and is not appealable).  Thus this Court has no authority to alter the final judgment of another district court.  The decision of the Nevada court is res judicata as it is a final judgment of the issues sought to be raised here, namely whether Fresh timely extended the Lease, and issues which could have been raised in the Nevada litigation, namely the pendency of the stay.  *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) ("the doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").  Further, the Receiver could have sought transfer of the Nevada case to this Court, but again chose not to act.  A party cannot rest on its laurels, wait to see how one court rules, and then raise the same issue in a second court when the ruling is not to its liking.

This factor clearly tips in the Movant's favor.  Fresh elected to institute an action against Weingarten in Nevada,[4] and by so doing took the risk of receiving an unfavorable determination from the court.  It is patently unfair to allow the

---

[4] The Court must note that the Receiver's assertion that it was explicitly allowed to bring the action against Weingarten by order of this Court is false.  The Receiver has asserted that "[t]his Court's stay was lifted so that BF could initiate any affirmative actions without further Order of this Court by Order entered September 20, 2012 (Docket No. 22)."  [Dkt. 81, Receiver's Opposition, p. 3 n. 1].  However, as Weingarten astutely points out, this Court's September 20, 2012 Order provided for a lifting of the stay without further Court Order for "Claims and causes of action against current and former lessees, sub-lessees, their guarantors and related parties arising out of, resulting from or relating to breach of leases and/or sub-leases."  [Dkt. 22, September 20, 2012 Order Lifting Stay for a Limited Purpose, pp. 1-2].  Weingarten is not a lessee or sub-lessee of Fresh or BFAH, and thus this litigation stay was not lifted as to Fresh's action against Weingarten.

Receiver to withhold the existence of the stay and, only after it has lost, use the receivership stay in this case to prevent Weingarten from enforcing its rights pursuant to the Nevada District Court's valid and legally binding determination that Fresh had failed to timely extend and thus possessed *no interest in the Premises*.

IV.    <u>Conclusion</u>

The Court concludes that the Lease and the Premises to which the Nevada District Court found that Fresh was not entitled are not assets of the Receivership estate, and thus the stay cannot apply to Weingarten's proposed action against Fresh.  The Court further concludes that even if the Lease and the Premises are receivership assets, Weingarten has met its burden of establishing that the harm it would suffer, the advanced stage of the receivership, and the superior merit of its position weigh in favor of lifting the stay to allow Weingarten to pursue an action to recover its property.  For the foregoing reasons, the Movant's Emergency Motion to Modify the Stay Order is GRANTED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: June 11, 2014

20